IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| LAMAR FLYNN, #160 950 | * |
| Plaintiff, | * |
| v. | *  2:04-CV-239-DRB |
| | (WO) |
| JERRY SCOTT, *et al.*, | * |
| Defendants. | * |

_____

**MEMORANDUM OPINION**

Plaintiff, Lamar Flynn ["Flynn"], filed this 42 U.S.C. § 1983 action on March 11, 2004.[1] He brings this complaint for damages and injunctive relief complaining that Defendants violated his constitutional rights during disciplinary proceedings and when they engaged in retaliatory and conspiratorial conduct by subjecting him to false disciplinary charges and reclassifying him to a higher security classification. Named as defendants are Lieutenant Jerry Scott, Sergeant J.G. Boyett, Warden J.C. Giles, Assistant Warden Darrell Parker, and Classification Specialist Tanya Morris.

In accordance with the orders of the court, Defendants filed a special report and supporting evidentiary material in response to the allegations contained in the complaint, as amended. The court then informed Flynn that Defendants' special report may, at any time,

---

[1] At the time he filed this complaint, Flynn was incarcerated at the Kilby Correctional Facility. During the pendency of this action, Flynn was transferred to another correctional facility within Alabama.

be treated as a motion for summary judgment, and the court explained to Flynn the proper manner in which to respond to a motion for summary judgment. Flynn filed a response to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Flynn's opposition to this motion, the court concludes that Defendants' motion for summary judgment shall be granted.

## I. FACTS AND ALLEGATIONS

On August 28, 2003 Lt. Scott received a phone call from Larry Cox, the Supervisor for the City of Sulligent, Alabama. Cox informed Lt. Scott that two inmates assigned to work with him had been engaged in a fight. The City Supervisor identified the two inmates as Flynn and inmate Robert Phillips. As a result of the altercation, Flynn received a disciplinary for violating Rule #31, Assault on Another Inmate (with a weapon). At the disciplinary hearing held September 2, 2003, Flynn testified as did arresting officer Lt. Scott. The written statements of inmate witness Alonzo McConico and free world witness Roy Reeves were read into evidence. Plaintiff's witness, Henry Wiley, declined to appear at the hearing because he had no knowledge of the incident.

After hearing all the testimony, the hearing officer found Flynn guilty of violating Rule #31 and sanctioned him to 45 days disciplinary segregation and 30 days loss of visiting and store privileges. The hearing officer also recommended Flynn to classification for a re-classification hearing. Flynn was transferred to the Ventress Correctional Facility on September 2, 2003 because Hamilton A&I is not equipped to house inmates assigned to

segregation. Flynn's reclassification hearing was held on September 15, 2003. On September 17, 2003 he was transferred to Holman Correctional Facility's Administrative Segregation pending approval for his classification custody increase. On September 23, 2003 Flynn was approved for placement into maximum custody and transfer to a facility that houses maximum custody inmates. (Doc. No. 10, Exhs. 1-9.)

Flynn asserts that he never assaulted inmate Phillips, and therefore, the disciplinary he received for this conduct was false, which in turn caused false information to be the basis for his re-classification to maximum custody. He maintains that Defendants Scott and Boyett conspired to bring the false disciplinary charge against him in retaliation for his family and lawyer going to Hamilton A&I to see what they could do in order "to get Plaintiff away[] from their institution." Flynn further alleges a denial of due process during the disciplinary hearing and contends that Defendants conspired to re-classify him to a higher security classification based on a false disciplinary charge. (Doc. No. 1& Attachment.)

## II.  STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Flynn is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.

*Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996).  Summary judgment is appropriate, therefore, when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-

moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Flynn has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

*A. The Disciplinary Claim*

Flynn argues that Defendant Boyett denied him due process during the disciplinary hearing because he did not allow Flynn to call witnesses on his behalf and he was unable, therefore, properly to defend himself against the disciplinary charge. Flynn's complaint that he was denied due process during his disciplinary proceedings entitles him to no relief.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." Thus, due process is required only if a person is deprived of an interest protected by the Due Process Clause. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court abandoned the *Thompson*,[2] *Olim*,[3] and *Hewitt*[4] methodology for determining the existence of a liberty interest. Under the methodology of those cases, a court ascertained whether a state created a liberty interest protected by the Due Process Clause by reviewing

---

[2] *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989).

[3] *Olim v. Wakinekona*, 461 U.S. 238 (1983).

[4] *Hewitt v. Helms*, 459 U.S. 460 (1983).

language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion." In *Sandin*, the Court directed that when determining whether a constitutionally protected interest exists, courts must look to the nature of the deprivation rather than statutory or regulatory language.

> Following *Wolff*,[5] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (footnote added) (citations omitted).

Following the reasoning of the Supreme Court in *Sandin*, the undersigned concludes that the *Sandin* decision makes clear that the Due Process Clause is implicated only when the actions taken against an inmate represent a "dramatic departure" from the ordinary conditions of incarceration. *Id*. 515 U.S. at 485. Where the loss suffered by a plaintiff amounts to a grievous loss of a substantive interest, the protection of the Due Process Clause is invoked. *Id*. 485-86. In the instant cause of action, Flynn's temporary loss of privileges, his assignment to disciplinary segregation for forty-five days, and his referral to classification for a reclassification hearing, do not represent a "dramatic departure" from the ordinary conditions of confinement. *Id*. at 485. Flynn's due process claim, therefore, entitles him to no relief and Defendants are entitled to summary judgment on this claim.

---

[5]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

*B. The False Disciplinary Claim*

Flynn asserts that he is innocent of the conduct alleged in the disciplinary he received for violating Rule #31. Consequently, he alleges that Defendant Scott denied him due process by charging him with a false disciplinary. Defendants maintain that the decision to charge Flynn with an infraction occurred due to his violation of an institutional rule governing inmate behavior. It is, therefore, clear that Defendants do not admit that the information contained in the August 28, 2003 disciplinary report is either fabricated or false.

While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Flynn merely asserts that Defendants based the disciplinary notice on false information. This does not state a claim for relief and Defendants shall be granted summary judgment on this claim.

*C. The Classification Claim*

To the extent Flynn alleges that Defendants violated his right to due process when they reclassified him to maximum security after he was found guilty of violating Rule #31,

7

he is likewise entitled to no relief. Even assuming an incorrect classification, his constitutional rights were not violated.

As previously noted, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. An inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Moreover, a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Constitution itself does not confer any right upon an inmate to any particular custody or security classification); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460 (1983).

Because Flynn has no constitutional right to a specific classification and/or security status, correctional officials may change his classification for a good reason, a bad reason, or no reason at all. Thus, the decision to re-classify Flynn to maximum custody status on administrative segregation did not violate his constitutional rights. Because Flynn's allegation fails to assert a deprivation of any constitutionally protected liberty interest, he has no entitlement to due process in connection therewith.

*D. The Retaliation Claim*

According to Flynn, Defendants Scott and Boyett charged him with a false disciplinary "in retaliation for his family and lawyer calling and coming to the camp [to] see what can they do to get Plaintiff away[] from their institution." (Doc. No. 1, Attachment at pg. 5 of 7.) Defendants' evidence shows that the decision to charge Flynn with a violation of Rule #31 resulted from his assaultive behavior towards another inmate. (Doc. No. 10, Exh. #6.)

Federal courts must "carefully scrutinize retaliation claims" which challenge the issuance of disciplinaries against prison inmates as prisoners often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir.1983). Carefully scrutinizing such claims is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.").

To state a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment

9

simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to demonstration of a retaliation claim. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official

satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient evidence that the proffered reason for the adverse decision is a pretext for retaliation.

For purposes of this opinion, the court will assume, without deciding, that Flynn carried his initial burden of presenting prima facie proof of retaliation. Defendants, however, have demonstrated through affidavits and other relevant admissible evidence that the adverse actions about which Flynn complains resulted from his violation of institutional rules. Flynn offers only his conclusory allegation that Defendants' actions were retaliatory. As this court must "carefully scrutinize retaliation claims" arising from prison disciplinary actions, *Woods*, 60 F.3d at 1166, and access such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Flynn's conclusory allegation is insufficient to show that the reasons proffered by Defendants Scott and Boyett and substantiated by the evidentiary materials are pretextual. Consequently, Defendants are entitled to summary judgment on Flynn's retaliation claim as the court finds that no retaliatory motive existed for issuing Flynn a disciplinary for violating Rule #31.

E. The Conspiracy Claim

Flynn contends that Defendants conspired to violate his constitutional rights by issuing him a false disciplinary for a major rule violation which in turn allowed them to re-classify him to a higher security classification level. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other*

*grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n. 4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement . . ." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . . For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The court has carefully reviewed the pleadings filed by the parties. There is a total lack of evidence to support Flynn's theory that Defendants conspired to deprive him of his constitutional rights. Specifically, he fails to present any evidence which demonstrates that Defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Flynn's assertions are self serving, purely conclusory allegations that fail to assert

those material facts necessary to establish a conspiracy between Defendants. *See Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, Flynn has failed to produce requisite evidence of a conspiracy, and Defendants are entitled to summary judgment on this claim. *Bailey*, 956 F.2d at 1122.

### IV.  CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment (Doc. No. 10) shall be granted.

A separate Judgment and Order follows.

Done, this 8th day of May 2006.

/s/ Delores R. Boyd

DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE